# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| AMTROL HOLDINGS, INC., *et al.*, | ) | Case No. 06-11446(KG) |
| | ) | (Jointly Administered) |
| Reorganized Debtors. | ) | |
| _____ ) | | **Re: D.I. Nos. 442 and 577** |

## MEMORANDUM OPINION[1]

**BY:   KEVIN GROSS, UNITED STATES BANKRUPTCY JUDGE**

The parties to the dispute before the Court have ably and thoroughly presented arguments on issues arising out of claims objections. The issues presented include the Court's jurisdiction, abstention, preemption and the effect of a confirmed plan of reorganization's injunction against claimants' litigation, all arising from a personal injury action pending in a state court.

## BACKGROUND

Amtrol Holdings, Inc., and related entities ("the Reorganized Debtors") are leading designers, manufactures and marketers of expansion and pressure controlled products used in water systems applications and selected heating, ventilation and air conditioning. The Reorganized Debtors' principal products include well water accumulators, hot water expansion controls, water treatment products, indirect-fired water heaters and cylinders used to store, transport and dispense water refrigerant, heating and cooking gases. The

---

[1] This Memorandum Opinion constitutes the findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052.

Reorganized Debtors filed for relief under chapter 11 of the Bankruptcy Code on December 18, 2006. The Court entered an order ("the Confirmation Order") confirming the First Amended Joint Plan of Reorganization ("the Plan"), with an effective date of June 5, 2007. Under the Plan, the Reorganized Debtors had the right to file objections to creditors' claims. The bar date for the filing of claims for non-governmental units was March 23, 2007. Creditors filed approximately 300 proofs of claims. The Reorganized Debtors filed claims objections, including Reorganized Debtors' Third Omnibus Objection to Claims Pursuant to 11 U.S.C. § 502(b) and Fed.R.Bankr. P. 3007 [Books and Records Claims - Substantive], dated June 25, 2007 (D.I. 442) ("the Claims Objection"). The basis for the Claims Objection was that the covered claims exceeded the amount owed according to the Reorganized Debtors' books and records, or the Reorganized Debtors determined they had no liability with respect to the claims. The Reorganized Debtors asserted the latter basis for the objection to the claims at issue here.

## THE ELDER FAMILY CLAIMS

Kenneth Elder, Sr. and Barbara Elder, jointly, Lewis H. Elder and Anna Nicole Elder ("the Elders") filed claims against Reorganized Debtors ("the Elder Claims") for losses relating to the death of Kenneth Elder ("the Decedent"). Prior to the bankruptcy filings, in October, 2004, the Elders brought an action in the Circuit Court for the City of St. Louis, Missouri ("the State Court Action") against the Reorganized Debtors and Airosol Company,

Inc. ("Airosol").[2] The Elders voluntarily dismissed several defendants from the State Court Action. In addition to the Reorganized Debtors, the remaining defendant is Airosol, which filed and distributed the cylinder. The Elders filed a first amended complaint and a second amended complaint. They assert causes of action in strict product liability and for wrongful death. The causes of action are based on allegations of design defect and improper manufacture of a gas cylinder, and allegations of inadequate warning labels. The Elders' expert opined that the pressure relief device on the cylinder should, but did not, release high internal pressures prior to rupture of the walls; the cylinder was designed and manufactured with paint or materials that were too thin or too soft to prevent it from corrosion or rust; the cylinder's pressure relief device was inadequately designed and the cylinder had inadequate warnings for its intended use because it failed to warn against using it if there was rust or corrosion on the surface. The expert opined that the rusted and thinned section of the cylinder was what ruptured and killed Decedent. The expert also testified at his deposition that the cylinder complied with the federal standards.

Each of the Elders timely filed three proofs of claim against the Reorganized Debtors, i.e., nine proofs of claim. Each proof of claim was for $1,666,667.

---

[2] The Decedent was a forty year old man who died when a cylinder known as a "DOT 39 non-reusable cylinder" containing a refrigerant exploded. The Decedent was preparing to use the cylinder to fill a refrigerator with coolant. Amtrol, Inc., one of the Reorganized Debtors, had designed and manufactured the cylinder and had sold it approximately eight years before the accident.

**DISCUSSION**

The parties' arguments, written and oral, are extensive because of the intricate nature of the issues. On one side stands the Elders seeking the opportunity to place the untimely death of a loved one before a jury for monetary compensation for their loss. On the other side are the Reorganized Debtors who want to close the administration of their estates and ask the Court to adopt their arguments that the Elder Claims are preempted by a federal statute, namely, the Hazardous Materials Transportation Act ("HMTA"), 49 U.S.C. § 5125[3]. The Elders also ask the Court to abstain from deciding the merits of their claim and permit them to proceed to trial in the State Court Action.

1. Jurisdiction

It is beyond cavil that by filing a claim against a bankruptcy estate, a creditor submits that claim to the bankruptcy court's jurisdiction and even subordinates any right to a jury trial outside of bankruptcy. *Langenkamp v. Culp*, 498 U.S. 42 (1990). *See also In re UAL*, 310 B.R. 373, 378 (Bankr.N.D.Ill 2004):

> Under these principles, the assertion of a claim against an estate in bankruptcy is sufficient to bring that claim within the bankruptcy jurisdiction, regardless of whether a right to a jury trial would attach to the claim outside of bankruptcy and regardless of the nature of the claim - whether it arises under federal or state law, and whether it involves a breach of contract,

---

[3] The HTMA is a portion of the Transportation Safety Act which Congress enacted in 1975. *See* Transportation Safety Act, P.L. 93-633, 88 Stat. 2157 (49 U.S.C. §§ 5101, *et seq.*). Thereafter, Congress passed the Hazardous Materials Transportation Uniform Security Act of 1990, amending the HMTA. 104 Stat. 3244 (1990). The Court's references to the HMTA are to the amended version unless otherwise noted.

a personal injury tort, or a property damage tort.

Therefore, the Elders submitted to the Court's jurisdiction when they filed their proofs of claim.

The allowance or disallowance of claims is a core function of bankruptcy. Id. at 377; 28 U.S.C. § 157(b)(2)(B). An exception to the bankruptcy court's authority to adjudicate claims is the "liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution. . . ." *Id.*

In *In re UAL*, the court was faced with an objection to a claim which required the court to determine whether or not personal injuries suffered by airline passengers were compensable under the Warsaw Convention[4]. The court determined that the airline was not liable and disallowed the personal injury claims. The court ruled that although it lacked jurisdiction to liquidate or estimate personal injury claims, it had jurisdiction to determine the legal enforceability of a personal injury claim since it was not determining a dollar amount.[5] Stated plainly, bankruptcy courts are authorized to determine the validity of a personal injury claim but not the amount. Accord, *In re G-I Holdings, Inc.*, 323 B.R. 583,

---

[4] The Warsaw Convention is a treaty which governs airlines' liability to passengers and restricts liability to injuries caused by an unusual or unexpected event that is external to the passenger.

[5] The court in *UAL* applied the "narrow view" of the personal injury claim exception. A bankruptcy court applying a "broad view" of the exception would conclude that any ruling which disallows a tort claim is effectively a liquidation of that claim and therefore outside the bankruptcy court's jurisdiction. *See, e.g.*, *In re Schepps Food Stores, Inc.*, 169 B.R. 374 (Bankr.S.D.Tex. 2004) (court refused to consider a statute of limitations defense).

612-615 (Bankr.D.N.J. 2005).

## 2. Preemption

Having decided that the Elders are subject to the Court's jurisdiction, the Court must now determine whether the Elder Claims are to be dismissed as premised upon matters preempted by federal law, i.e., the HMTA. The analysis begins with the statute itself, which provides, in part:

> (4) PREEMPTION. --
>
> (A) GENERAL RULE. – Except as provided in subsection (b) and unless otherwise authorized by Federal law, any law, regulation, order, ruling, provision, or other requirement of a State or political subdivision thereof or an Indian tribe, which concerns a subject listed in subparagraph (B) and which is not substantively the same as any provision of the Act or any regulation under such provision which concerns such subject, is preempted.
>
> (B) COVERED SUBJECTS. – The subjects referred to in subparagraph (A) are the following:
>
> (i) The designation, description, and classification of hazardous materials.
>
> (ii) The packing, repacking, handling, labeling, marking, and placarding of hazardous materials.
>
> (iii) The preparation, execution, and use of shipping documents pertaining to hazardous materials and requirements respecting the number, content, and placement of such documents.
>
> (iv) The written notification, recording, and reporting of the unintentional release in transportation of hazardous materials.

> (v) The design, manufacturing, fabrication, marking, maintenance, reconditioning, repairing, or testing of a package or container which is represented, marked, certified, or sold as qualified for use in the transportation of hazardous materials. [6]

Preemption is based on the Supremacy Clause of the United States Constitution, that "the Laws of the United States... shall be the supreme Law of the Land...." U.S. Const. Art. VI, cl.2. As a result, state laws that conflict with or are contrary to federal law must give way to and are preempted by the governing federal law. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992); and *Integrated Solutions, Inc. v. Serv. Support Specialties, Inc.*, 124 F.3d 487 (3d Cir. 1997).

The Court will resist the temptation to indulge in the extensive discussion of the intricacies of preemption. It will be sufficient to determine if the preemptive expanse of the HMTA extinguishes the Elder Claims.

The HMTA, as originally adopted, included an express preemption provision, as follows:

> Any requirement, of a state or political subdivision thereof, which is not consistent with any requirement set forth in this title, or in a regulation issued under this title, is not preempted if, upon the application of an appropriate state agency, the secretary determines, in accordance with procedures to be prescribed by regulation, that such requirement (1) affords an equal or greater level of protection to the public than is afforded by the requirements of this title or of regulations issued under this title and (2) does not unreasonably burden commerce. Such requirement shall not be preempted to the extent specified in such determination by the secretary for so long as such state or

---

[6] Hazardous Materials Transportation Uniform Safety Act of 1990, 104 Stat. §244, 3247-48 (1990).

>political subdivision thereof continues to administer and enforce effectively such requirement. [7]

49 U.S.C. § 1811. The legislative history of the 1990 Amendment to the HMTA explained that the original intent of the HMTA was to protect the public from the risks of hazardous materials transportation and "to preclude a multiplicity of state and local regulations...." S.R.Rep.No. 1-449, reprinted in 90 U.S.C.C.A.N. 4596.

A court's analysis of the preemptive authority of a federal statute requires it to consider the structure and purpose of the statute in its entirety in order to comprehend congressional intent. The Court shouldn't look beyond the statutory language in its determination of the intent. *Hawkins v. Leslie's Pool Mart*, 184 F.3d 244, 248 (3d Cir. 1999). At the same time, the Court recognizes that "congressional intent to pre-empt will not be inferred lightly" and that courts should be "reluctant to assume federal preemption." *In re Roach*, 824 F.2d 1370, 1373-74 (3d Cir. 1987).

The Elders insist that their dispute with the Reorganized Debtors and the nature of the Elder Claims is not related to transportation of the cylinder but, rather, addresses end use of the cylinder long after it was transported. The Elders rely upon the opinion of their expert that the cylinder was designed and manufactured in a manner that increased the risk of rust or corrosion when in long-term use (here, eight years), the pressure release device was improperly designed for a rusted cylinder and there were inadequate warnings against the use

---

[7] *See* Transportation Safety Act, §112, 88 Stat. 2157, 2161 (1975) (current version at 49 U.S.C. § 5125). There is no evidence that the State of Missouri ever applied for relief from preemption.

of a rusted or corroded cylinder. The expert further opined that the rusting and thinning of the cylinder resulted in the cylinder rupturing which caused Decedent's death.

The Reorganized Debtors emphasize the HMTA governs the packing, labeling, design, manufacturing, fabricating and working of the cylinder in question. Therefore, the Reorganized Debtors argue, the Elders' defective design and warning claims are preempted.

The Court concludes that the Elder Claims are not preempted. The HMTA is concerned with the transportation of cylinders. Clearly, the interstate transportation of cylinders would grind to a halt if states could stop carriers at each state's border and require compliance with different requirements from one state to the next. That is not the situation at hand as the HMTA itself makes plain. The key preemption provision covers "(v) The design, manufacturing, fabrication, marking...<u>for use in the transportation of hazardous materials</u>." 49 U.S.C. §1804 (a) (4) (emphasis supplied). Here, the Decedent's use of the cylinder is too far removed from transportation to preempt the Elder Claims.

The Court is persuaded by the rationale in *Lyall v. Leslie's Poolmart*, 984 F. Supp. 587 (E.D. Mich.1997) which held that the HMTA does not preempt a tort claim. In *Leslie's Poolmart*, a container exploded because of a buildup of internal pressure which resulted in injury to the plaintiff. The plaintiff alleged defective design and inadequate warning. The defendant argued the claims were preempted by the HMTA preemption clause. The Court concluded that:

> There is no conflict between plaintiff's product liability action and requirements under the HMTA which govern the ***transportation, not the end use,*** of hazardous materials....The regulations which defendant seeks to rely upon establish general standards for packaging for ***transportation*** and do not resolve the common law duty to package the material so that it is appropriate for reasonable use.

*Lyall* 984 F.Supp. at 598 (emphasis supplied). Decedent, like the plaintiff in *Lyall*, was an "end user" long after the cylinder was transported. Congress intended to regulate transportation, not use.[8]

The Court's decision is further influenced by a recent decision, *Whitfield v. Triad Transport, Inc.*, 2008 WL 139082 (E.D.Ark. Jan. 10, 2008). There, plaintiffs alleged that defendant was liable for, *inter alia*, defective design and labeling of hazardous materials. Defendant sought to remove the case from state court on the ground of preemption under the HMTA. The court ruled that preemption did not apply because the HMTA applied to transportation, not end use. The court remanded the case to state court and reflected that:

> The Court finds defendants fail to show that federal law preempts the plaintiffs' causes of action. The Hazardous Materials Transportation Act ("HMTA"), 49 U.S.C. § 5101 *et seq.*, has a preemption clause, but in its 30 year history, it has never been held to completely preempt state common law claims. *Orellana v. Boro-Wide Recycling Corp.*, 2007 WL 4442443 (N.Y.Sup.Ct. Dec. 19, 2007).

---

[8] To illustrate the point from the opposite end of use, if a worker in the facility which manufactured a cylinder were injured testing the cylinder because of a defect in the design, surely the workers tort claim would not be preempted. The cylinder was not in the transportation.

*Id.* at *2 (footnote omitted). The Court has found several other cases, post-1990 amendments to HMTA, holding likewise that the HMTA does not preempt personal injury actions brought by end users. See *e.g.*, *Olson v. Prosoco, Inc.*, 522 N.W. 2d 284 (Iowa 1994); and *Hurt v. Coyne Cylinder Co.*, 95F.2d 1319, 1323 (6th Cir. 1992).[9]

Before leaving the preemption issue, the Court acknowledges the Reorganized Debtors' effort to enlist the support of the United States Department of Transportation ("DOT") for its position on preemption. An attorney for Reorganized Debtors wrote a lengthy letter to the DOT seeking a determination pursuant to 49 CFR §107.23 that the HMTA preempts the Elders' labeling and design challenges. *See* letter, dated June 26, 2007, from Stephen J. Maasen to Mr. David Kunz, Chief Counsel, et al. ("the Letter"). In response to the Letter, the DOT wrote that it would be premature to determine if "a potential requirement affecting the transportation of hazardous material, which has not yet been adopted or come into effect, would be preempted." *See* letter, dated September 11, 2007, from Joseph Solomey, Assistant Chief Counsel for Hazardous Materials Safety Law, to Stephen J. Massen, Esquire ("the Response"). The Response further states that the DOT would be concerned with any "State law, regulation or judicial decision that imposed additional manufacturing and working requirements on a DOT 39 cylinder." Response at 3. However, the DOT also stated that "must be distinguished from requirements affecting the

---

[9] The Reorganized Debtors have not cited a single case in which a court ruled that the HMTA preempted a state law or cause of action. If the *Triad Transport* court is correct, there are none. Id., 2008 WL 139082 at *2.

11

use of that cylinder or other packagings." Response at 2 (emphasis in the original).

The Response does not persuade the Court that preemption applies to the Elder Claims.[10] The DOT declined to opine and, consistent with the Court's conclusion, distinguished between use and transportation.

### 3. Abstention

The Elders have asked the Court to abstain from hearing the Elder Claims and the Claims Objection pursuant to 28 U.S.C. § 1334(c)(1). *See* Motion of the Elder Family for Abstension ("the Abstention Motion") (D.I. 577). The statute upon which the Elders rely, Section 1334(c)(1), provides that:

> Nothing in this section prevents a district court in the interests of justice, or in the interests of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

The Elders correctly raise and analyze the factors which the Court and others consider in deciding if abstention is appropriate. The factors are:

1. The effect or lack thereof on the efficient administration of the bankruptcy estate if a court recommends abstention;

2. The extent to which state law issues predominate over bankruptcy issues;

3. The difficulty or unsettled nature of the applicable law;

---

[10] The Court must also reject the Reorganized Debtors' argument that in the absence of mandatory preemption, preemption by implication controls applying a four pronged test. Here, too, Congressional interest concerned transportation, not use of hazardous materials.

    4.    The presence of a related proceeding commenced in state court or other nonbankruptcy court;

    5.    The jurisdictional basis, if any, other than 28 U.S.C. § 1334;

    6.    The degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

    7.    The substance rather than form of an asserted "core" proceeding;

    8.    The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

    9.    The burden of the bankruptcy court's docket;

    10.    The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

    11.    The existence of the right to jury trial; and

    12.    The presence of the proceeding of non-debtor parties.

*See In re Holiday RV Superstores, Inc.*, 362 B.R. 126, 130 (D.Del. 2007); *In re Canfibre of Riverside, Inc.*, 2006 WL 2130664 (Bankr.D.Del. 2006); *In re Loewen Group Int'l, Inc.*, 344 B.R. 727, 729 (Bankr.D.Del. 2006).

The Court is fully convinced that the Elders satisfy ten of the twelve factors. The two exceptions are the burden on the Court's docket[11] and the likelihood of forum shopping. Under other circumstances, the Court would abstain without hesitation. However, the facts and procedural setting will not permit the Court to grant the Motion.

---

[11] The Court has a busy docket but no more than other courts and, in particular, our District Court, as discussed below. References to the "District Court" are to the United States District Court of Delaware.

4. The Plan Injunction

The Court has already discussed the Elders' submission to its jurisdiction by filing the Elder Claims. The Elders also did not object to the Plan[12], which provides in relevant part:

> Section 7.03 Injunctions
>
> (a) Except as otherwise provided in this Plan, or the Confirmation Order, as of the Effective Date, all Persons that have held, currently hold or may hold a Claim or other debt or liability that is discharged or an Interest or other right of an equity security holder that is terminated pursuant to the terms of this Plan are permanently enjoined from taking any of the following actions on account of any such discharged Claims, debts or liabilities or terminated Interests or rights:
>
> \*   \*   \*
>
> (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of this plan.

The Elders cannot and do not contest the *res judicata* impact of the Confirmation Order and the injunction. Clearly, the Confirmation Order is a final judgment, they were parties and in the Abstention Motion the Elders raise issues they could have raised as objections to the Plan. The requirements for *res judicata* are fully satisfied. *CoreStates Bank, N.A. v. Huls AM., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999); *Donaldson v. Bernstein*, 104 F.3d 547 (3rd Cir. 1997) (confirmation order is *res judicata* as to all issues decided or which

---

[12] The Elders allege that the Reorganized Debtors lulled them into not pursuing a motion to lift the automatic stay to pursue the State Court Action. The Court believes the Elders' assertion that they thought the Plan was not an impediment to their ability to proceed with the State Court Action. Unfortunately, the Elders were wrong.

could have been decided). The Court therefore concludes that the Elders are enjoined from proceeding with the State Court Action and the Elder Claims are now before the Court.

The Elders argue that neither the discharge injunction in the Confirmation Order nor the injunctive relief in the Plan preclude abstention. They rely principally upon *Citibank, N.A. v. White Motor Corporation* (*In re White Motor Credit*), 761 F.2d 270 (6th Cir. 1985). The court ruled that the plan and confirmation order injunctions did not prohibit permissive abstention. Accordingly, the court permitted approximately 160 personal injury claims to proceed in various courts where they were pending prior to the bankruptcy case. The court stated:

> [A] modification or temporary lifting of the permanent [discharge] injunction is necessary for consummation of the plan. Sections 1141-1143 give the court broad powers to consummate the plan. Section 524 must be read in conjunction with the overall purposes of the Code. Congress must have contemplated that plans would be confirmed before all contingent claims can be liquidated in various courts.

Id. at 273.

The Reorganized Debtors counter arguments are more persuasive. First, in *White Motor* the Plan did not contain the procedures for claim review. Here the Plan explicitly provides the claims liquidation procedures. Second, there were 160 personal injury claims requiring liquidation in *White Motors*. The court recognized that "judicial economy and expeditiousness, may depend on the court's authority to refer cases to other courts." *Id.* at 274. The Elder Claim, comprising one litigation, is the only personal injury claim requiring liquidation and will not burden the Court.

The Elders argue that their proceeding in the State Court Action is not "non-compliant or inconsistent" with the Plan or Confirmation Order and, therefore, they are entitled to proceed in their chosen forum. The Court does not agree. The Plan and the Confirmation Order enjoin them from pursuing the State Court Action. Moreover, the First Amended Disclosure Statement ("the Disclosure Statement") (D.I. 317), by its very terms, gave the Elders notice that only asbestos claimants were not subject to the Plan. Disclosure Statement at 18. The Elders chose not to object to the Plan despite their submission to the Court's jurisdiction. The Court's Confirmation Order is further binding on the Elders pursuant to 11 U.S.C. § 1141(a). Therefore, the Elders' arguments that (1) they have not consented to the Court's adjudication of the Elder Claims and (2) that neither the Plan nor the Confirmation Order prohibits abstention or prosecution of the Elder Claims in the State Court Action are untenable.

Finally, and significantly, in *White Motors* it was the district court which decided that the personal injury claims should proceed in the courts where they were pending pre-petition. It is the District Court, not this Court, which is authorized to determine in which federal district court the Elder Claims are to proceed. 28 U.S.C. § 157(b)(5) requires that:

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

The Court is reluctant to burden an already overburdened District Court with ts busy docket and operating under the strain of having one judge fewer than its minimal entitlement with having to determine whether the Elder Claims should proceed in the District Court or the district court in Missouri. The Court, however, must defer to the District Court's sole authority. Section 157(b)(5) mandates such a result. Should the District Court determine that the Elder Claims will be tried in this district, the Court stands ready at the District Court's direction to adjudicate the pretrial proceedings.[13]

## CONCLUSION

The Court is fully satisfied that the Elders are not preempted from seeking recovery for their loss of the Decedent, that abstention is not appropriate and, equally, that the District Court is statutorily charged with deciding the proper district for the jury trial on the merits of the Elder Claims. The Court will issue an order consistent with this opinion.

Dated: April 1, 2008

UNITED STATES BANKRUPTCY JUDGE

---

[13] The Court also notes that if the District Court directs and the parties consent, the Court may conduct the jury trial. 28 U.S.C. § 157(e). Otherwise, the Court lacks jurisdiction to liquidate the Elder Claims. 28 U.S.C. § 157(b)(2)(B).

17